UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

KEVIN DWAYNE THERIOT,

          Plaintiff,

v.

JEFFREY WOODS et al.,

          Defendants.
_____/

Case No. 2:17-cv-160

Honorable Janet T. Neff

## **OPINION**

      This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's pro se complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Woods, Huhta, Pesola, Dube, Kutchie, Hemmila, Petaga, Morgan, LaChance, Goodreva, Velma, Hennigs, Lee, Phillips, Skytta, Bray, LaForest, Evans, Marshall, Bessener, Berry, Horocs, Fliccano, Washington, Tussing, Russell, Unknown Hoffman, Raymond, Calzetta, Szagganlessory, Sunberg, and Bessner. The Court will serve the complaint against Defendants Latnen, Vitteleo, Huss, and Napel.

**Discussion**

I.      **Factual allegations**

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Baraga Correctional Facility (AMF) in Baraga, Michigan. The events about which he complains occurred at that facility and the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan and the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. Plaintiff sues Warden Jeffrey Woods, Corrections Officers Unknown Huhta, Unknown Pesola, Unknown Dube, Unknown Kutchie, and Unknown Hemmila, Inspector Unknown Petaga, Corrections Officers Unknown Morgan, Unknown LaChance, Unknown Goodreva, Unknown Velma, and Lieutenant Unknown Hennigs, Sergeant Unknown Lee, Corrections Officers Unknown Phillips, Unknown Skytta, Unknown Bray, Lieutenant Unknown LaForest, Corrections Officer Unknown Evans, Assistant Deputy Warden Unknown Marshall, Assistant Resident Unit Supervisor Unknown Bessener, Assistant Resident Unit Supervisor Unknown Latnen, Sergeant Unknown Berry, Assistant Deputy Warden Unknown Huss, Assistant Resident Unit Supervisor Unknown Horocs, Librarian Unknown Fliccano, Warden Robert Napel, Resident Unit Manager Unknown Vitteleo, MDOC Director Heidi E. Washington, Sergeant Unknown Tussing, Hearings Administrator Richard Russell, Administrative Assistant Unknown Hoffman, Hearings Investigator Unknown Raymond, Prison Counselor Unknown Calzetta, Hearing Officer M. Szagganlessory, Nurse Unknown Sunberg, and Corrections Officer Unknown Bessner.

Plaintiff alleges that on January 29, 2013, officials at URF used excessive force when they used a chemical agent on him after he refused to pack up his property for a transfer. Plaintiff states that the use of chemical agent was ordered by Defendant Woods. On January 30,

2

2013, Plaintiff was transferred to AMF. Plaintiff states that while at AMF, he told SCC (Security Classification Committee) members about the January 29, 2013, excessive force.

Plaintiff was transferred to MBP sometime in 2016, and immediately informed staff about the January 29, 2013, excessive force incident. Plaintiff sent documents regarding the incident to the Grievance Coordinator, Inspectors, and Defendants Napel, Horocs, and Huss, but they kept the documents and ignored Plaintiff's complaint in order to protect staff at URF. Plaintiff claims that these same individuals moved him frequently so that he could not pursue his claim. Plaintiff states that Defendants Goodreva, LaChance, Huhta, Velma, and Huss wrote retaliatory tickets on Plaintiff. Plaintiff alleges that Defendant Goodreva had him placed in segregation on October 2, 2014, and Defendant Huss had him placed in segregation on April 29, 2016, both times in retaliation for Plaintiff bringing up the January 29, 2013, excessive force incident. Plaintiff also states that Defendant LaChance stole his deodorant.

Plaintiff contends that he has been the victim of stalking and sexual harassment by Defendants Huhta, Pesola, Dube, Hemmila, Lee, Morgan, and Berry, as well as other prison officials. Plaintiff alleges that between June 5, 2014, and September 22, 2014, Defendant Hemmila sexually harassed him by tampering with Plaintiff's store lists, watching Plaintiff while he went about his business, standing too close to Plaintiff, and making gyrating motions of his hips while looking at Plaintiff. Plaintiff claims that between October 2, 2014, and December 28, 2015, Defendant Huhta "ogled" Plaintiff while passing out food trays and while Plaintiff was in the shower. Plaintiff claims that during this same time, Defendants Pesola and Kutchie made inappropriate comments toward Plaintiff, like referring to him as "big man," and peeked at Plaintiff while he was in the shower. Plaintiff also states that Defendants attempted to prevent female corrections officers from working around Plaintiff because they were jealous of Plaintiff being

able to see any females. Plaintiff claims that Defendant Morgan purposefully shook Plaintiff and other prisoners down at shower time solely for his own sexual gratification. Plaintiff also makes numerous allegations against Assistant Resident Unit Supervisor Burke regarding stalking behavior. However, Plaintiff fails to name Assistant Resident Unit Supervisor Burke as a defendant in this case. Plaintiff claims that he "had so many sexual stalkers [he] would go to yard maybe only once a week and [for] haircuts."

Plaintiff contends that he has given numerous grievances, complaints, and documents on the issue of his January 29, 2013, assault to staff for mailing, but was never provided with an official address. Plaintiff states that Defendant Russell never responded to his request for a rehearing for some unspecified misconduct, which Plaintiff claims denied him due process.

On April 29, 2016, Plaintiff received a misconduct ticket while in segregation, but never received a hearing on that misconduct. On May 3, 2016, Plaintiff was protesting the fact that he had been illegally gassed on January 29, 2013, and that he had been illegally placed in segregation on April 29, 2016, without the issuance of either a misconduct or a Notice of Intent. Plaintiff states that he got his aunt Cheryl Theriot and the block unit representatives involved in his case, which led to his segregation. In order to protest, Plaintiff claimed to be suicidal and said he would only come out of his cell if staff officially acknowledged his claim of excessive force, which occurred on January 29, 2013. Once confronted by staff, Plaintiff admitted that he was not suicidal and just wanted due process. Thereafter, Plaintiff was gassed and while he was unable to see, Defendant Lee stuck a finger or thumb in Plaintiff's rectum. A hearing was held on an assault charge against Plaintiff, but he was not informed of the hearing. Plaintiff was not cleared out of suicide watch by a psychiatric professional until May 6, 2016. Plaintiff wrote several grievances, which were never processed.

Plaintiff continued to write the Michigan Democratic House Speaker, which forced Hearing Officer Maki to give Plaintiff a fair hearing and find him "not guilty" of the retaliatory ticket. Plaintiff claims that in her findings, Hearing Officer Maki noted that something had been placed in Plaintiff's rectum during his time in segregation and asked that a questionnaire be ordered on AMF personnel. It appears that Plaintiff was confined at AMF by the time the hearing was held, and he alleges that staff at AMF withheld the questionnaire in order to protect MBP personnel.

While at MBP, Plaintiff attempted to bring attention to the misconduct of staff by sending complaints to Defendants Napel and Washington, and the Civil Service Commission, none of whom responded. When the evidence began to pile up, Plaintiff attempted to send copies of his complaints to Defendant Washington, Internal Affairs, the Ombudsman, Governor Rick Snyder, FOX News, CNN News, Humanity for Prisoners, the President of the USA, the Michigan State Police, the Department of Justice, and local news channels. Plaintiff claims that he had the correct amount of money in his account to cover the postage, but that Defendant Latnen refused to mail the complaints, citing a "trumped up" postage weight and saying that Plaintiff did not have enough money. Plaintiff claims that Defendants Vitteleo, Huss, and Napel approved this action. Plaintiff states that he could tell that his mail had been illegally opened and read, presumably by Defendants Latnen, Vitteleo, Huss, and Napel.

On September 22, 2016, Plaintiff sent evidence of the mail tampering to the library to have copies made. Defendant Fliccano made the copies, but then called Defendant Latnen about the copies. Defendant Latnen then called Defendants Vitteleo, Huss, and Napel, who instructed her to keep the copies. After a couple of days, Plaintiff wrote to Defendants Fliccano and Latnen asking about the status of his copies. Both Fliccano and Latnen responded that they did not have

the copies and did not know anything about them. Plaintiff then made an unsuccessful attempt to force staff to return his copies by breaking the cell sprinkler head and refusing to come out of his cell. Defendant Phillips wrote Plaintiff "retaliatory" tickets and Plaintiff was placed on food loaf.

On November 21, 2016, Defendant Morgan, who Plaintiff previously named as a sexual stalker and harasser, grabbed Plaintiff's buttocks while Plaintiff was on the way to recreation yard. This was observed by Officer Maudrie. Finally, Plaintiff claims that on February 14, 2017, he was ordered to exit his cell after barricading himself in his cell because he was afraid of additional "assaults, sexual assaults, sexual harassment, sexual stalking and retaliatory tickets." Plaintiff was removed from his cell by a move team pursuant to the orders of Defendants Marshall, and Bessner.

Plaintiff claims that Defendants violated his rights under the First, Eighth, and Fourteenth Amendments. Plaintiff seeks compensatory and punitive damages, as well as declaratory and injunctive relief.

## II. Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the

reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Initially, the Court notes that Plaintiff's claims regarding the use of a chemical agent on January 29, 2013, are barred by the statute of limitations. State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983. *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985). For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years. *See* Mich. Comp. Laws § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999). Accrual of the claim for relief, however, is a question of

federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984). The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action. *Collyer*, 98 F.3d at 220.[1]

Plaintiff had reason to know of the "harms" done to him as a result of being gassed on January 29, 2013, at the time of the incident. Hence, his claims accrued on January 29, 2013. However, Plaintiff did not file this complaint until September 25, 2017, well past Michigan's three-year limit. Moreover, Michigan law no longer tolls the running of the statute of limitations when a plaintiff is incarcerated. *See* MICH. COMP. LAWS § 600.5851(9). Further, it is well established that ignorance of the law does not warrant equitable tolling of a statute of limitations. *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991); *Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

A complaint "is frivolous where it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). A complaint may be dismissed as frivolous if it is time-barred by the appropriate statute of limitations. *See Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001). The Sixth Circuit has repeatedly held that when a meritorious affirmative defense based upon the applicable statute of limitations is obvious from the face of the complaint, *sua sponte* dismissal of the complaint is appropriate. *See id.*; *Beach v. Ohio*, No. 03-3187, 2003 WL 22416912, at *1 (6th Cir. Oct. 21, 2003); *Castillo v. Grogan*, No. 02-5294, 2002 WL

---

[1] 28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990. The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

31780936, at *1 (6th Cir. Dec. 11, 2002); *Duff v. Yount*, No. 02-5250, 2002 WL 31388756, at *1-2 (6th Cir. Oct. 22, 2002); *Paige v. Pandya*, No. 00-1325, 2000 WL 1828653 (6th Cir. Dec. 5, 2000).

In addition, although the statute of limitations is tolled for the period during which a plaintiff's available state remedies were being exhausted, *see Brown v. Morgan*, 209 F.3d 595, 596-97 (6th Cir. 2000), the total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved in writing by the Grievance Coordinator at Step I and/or Step II, and any extension shall not exceed 15 business days. *See* MDOC Policy Directive 03.02.130 ¶ S. Therefore, any possible tolling for exhaustion of remedies would not change the fact that Plaintiff's claim regarding the January 29, 2013, incident is barred by the statute of limitations.

Plaintiff also claims that he was prevented from pursuing his grievance remedies regarding the January 29, 2013, use of a chemical agent in violation of his due process rights. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-

2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Moreover, Defendants' alleged interference with the grievance procedure does not constitute a claim for denial of access to the courts. Even if Plaintiff had been improperly prevented from filing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001). In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim related to Defendants' alleged interference with his ability to file grievances regarding the January 29, 2013, use of chemical agent.

Plaintiff claims that he was subjected to sexual harassment and sexual assaults in violation of his Eighth Amendment rights. "[B]ecause the sexual harassment or abuse of an inmate by a corrections officer can never serve a legitimate penological purpose and may well result in severe physical and psychological harm, such abuse can, in certain circumstances, constitute the 'unnecessary and wanton infliction of pain' forbidden by the Eighth Amendment." *Freitas v. Ault*, 109 F.3d 1335, 1338 (8th Cir. 1997) (quoted cases omitted).

10

Circuit courts consistently have held that sexual harassment, absent contact or touching, does not satisfy the objective requirement because such conduct does not constitute the unnecessary and wanton infliction of pain. *See Morales v. Mackalm*, 278 F.3d 126, 132 (2d Cir. 2002) (allegations that prison guard asked prisoner to have sex with her and to masturbate in front of her and other female staffers did not rise to level of Eighth Amendment violation); *Barney v. Pulsipher*, 143 F.3d 1299, 1311 n.11 (10th Cir. 1998) (allegations that county jailer subjected female prisoners to severe verbal sexual harassment and intimidation was not sufficient to state a claim under the Eighth Amendment); *Howard v. Everett*, No. 99-1277EA, 2000 WL 268493, at *1 (8th Cir. March 10, 2000) (sexual comments and gestures by prison guards did not constitute unnecessary and wanton infliction of pain); *cf. Seltzer-Bey v. Delo*, 66 F.3d 961, 962-63 (8th Cir. 1995) (allegations that prison guard conducted daily strip searches, made sexual comments about prisoner's penis and buttocks, and rubbed prisoner's buttocks with nightstick were sufficient to withstand motion for summary judgment); *Zander v. McGinnis*, No. 97-1484, 1998 WL 384625, at *2 (6th Cir. June 19, 1998) (verbal abuse of mouthing "pet names" at prisoner for ten months failed to state an Eighth Amendment claim); *Murray v. United States Bureau of Prisons*, No. 95-5204, 1997 WL 34677, at *3 (6th Cir. Jan. 28, 1997) (magistrate judge correctly held that verbal abuse in the form of offensive remarks regarding a transsexual prisoner's bodily appearance, transsexualism, and presumed sexual preference cannot state an Eighth Amendment claim). Some courts have held that even minor, isolated incidents of sexual touching coupled with offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Solomon v. Mich. Dep't of Corr.*, 478 F. App'x 318, 320-21 (6th Cir. 2012) (two "brief" incidents of physical contact during pat-down searches, including touching and squeezing the prisoner's penis, coupled with sexual remarks, do not rise to the level of a constitutional violation); *Jackson*

*v. Madery,* 158 F. App'x 656, 661 (6th Cir. 2005) (correction officer's conduct in allegedly rubbing and grabbing prisoner's buttocks in degrading manner was "isolated, brief, and not severe" and so failed to meet Eighth Amendment standards); *Johnson v. Ward*, No. 99-1596, 2000 WL 659354, at *1 (6th Cir. May 11, 2000) (male prisoner's claim that a male officer placed his hand on the prisoner's buttock in a sexual manner and made an offensive sexual remark did not meet the objective component of the Eighth Amendment); *Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir. 1998) (where inmate failed to assert that he feared sexual abuse, two brief touches to his buttocks could not be construed as sexual assault); *accord Boxer X v. Harris,* 437 F.3d 1107, 1111 (11th Cir. 2006); *Boddie v. Schneider,* 105 F.3d 857, 859-61 (2d Cir. 1997) (court dismissed as inadequate prisoner's claim that female corrections officer made a pass at him, squeezed his hand, touched his penis, called him a "sexy black devil," pressed her breasts against his chest, and pressed against his private parts).

Plaintiff's claims that Defendants watched him excessively, stalked him, peeked at him while he was in the shower, and made inappropriate gestures and remarks do not rise to the level of an Eighth Amendment violation. Acts of verbal sexual harassment, standing alone, are insufficient to state a claim under the Eighth Amendment. *See Morales*, 278 F.3d at 132; *Zander*, 1998 WL 384625, at *2. Moreover, with regard to Plaintiff's claim that Defendant Morgan grabbed his buttocks while Plaintiff was on his way to yard, the Court notes that an isolated incident of grabbing a prisoner's buttocks did not violate the Eighth Amendment. *Jackson v. Madery,* 158 F. App'x 656, 661.

Plaintiff also claims that his Eighth Amendment rights were violated when Defendant Lee stuck a finger or thumb in his rectum on May 3, 2016. Plaintiff filed a grievance on Defendant Lee asserting this claim and received a misconduct for interference with the

12

administration of rules for making a false accusation. Hearing Officer Maki found Plaintiff not guilty of knowingly making a false accusation:

> According to the reporting staff member, after an investigation was conducted, "the video clearly shows that at no time did [Sergeant] Lee conduct himself in an unprofessional [manner] and the prisoner was in clear view of the camera through the entire Cell Extraction process. . . ." Hearing Officer watched the videos from the incident. There were two things of note. First, the prisoner was NOT in "clear view of the camera" the entire time. What was seen on the video, however, did not refute the reporting staff member's assertion that [Sergeant] Lee conducted himself in a professional manner. In fact, all staff were professional based on what was seen and heard on the video. Second, and most importantly, there may have been a factual basis for the prisoner's belief that [he] had been sodomized as the video showed the chain between the bellychains and leg restraints slid between the prisoner's buttocks as the prisoner was placed face down on the bunk. It is possible that the prisoner believed that he was being sodomized when he felt the chain. Since it was unclear that this was the point in time that the prisoner was referencing as the prisoner's grievance was extremely difficult to read, Hearing Officer adjourned the hearing so a transcript could be made of the grievance. This was not done probably because no one else was able to read the prisoner's complete grievance.
>
> In summary, based on what was presented, Hearing Officer is unable to find that the prisoner knew that the allegation of being sodomized was false when he made it and intentionally filed a false grievance. This is NOT to say that the prisoner's grievance was accurate as there was no evidence to suggest that the prisoner had actually been sodomized by any staff member as what was seen was just the result of the removal of the restraints that had been used to move the prisoner from one cell to another. This [is] only to say that there was a possible basis for the prisoner's false belief that he was being violated, which means that the prisoner did not intentionally file a false grievance, knowing it to be untrue. Charge not upheld.

*See* ECF 1-3, PageID.62. The Court notes that, contrary to Plaintiff's assertion, Hearing Officer Maki's conclusion did not affirmatively find that something had been placed in Plaintiff's rectum during his time in segregation. Rather, Hearing Officer Maki merely found that the feel of Plaintiff's belly chains against his buttocks could have caused him to mistakenly believe that he was being sodomized.

Following the decision of Hearing Officer Maki in this case, Defendant Napel sought a rehearing on the misconduct ticket. *See* ECF No. 1-3, PageID.69. A detailed decision was issued granting Defendant Napel's motion:

> The prisoner filed a PREA grievance pursuant to [Policy Directive] 03.02.140, "PRISON RAPE ELIMINATION ACT (PREA) AND PROHIBITED SEXUAL CONDUCT INVOLVING PRISONERS" against a staff member for allegedly sodomizing him in the course of a forced cell move after he had been gassed, stripped, and placed face down on his new bed in his new cell. The result of the extensive investigation was that the prisoner's allegations were unfounded and that it appeared the prisoner had used the PREA process in retaliation against staff. The policy allows for charging a prisoner with a misconduct under [sic] when a claim appears to have been falsely made, but only if approved by the Deputy Director of Corrections Facilities Administration. Considering the decision of the PREA Investigation, that approval was sought and obtained. The incident was also reviewed by the Michigan State Police who provided a statement, presented as evidence at the hearing, that stated that prisoner's allegation was "blatantly false" and that they would not be pursuing the case. Since the prisoner had a history of mental illness it is important to note that part of the PREA investigation produced documentation from a qualified mental health provider that the prisoner was responsible for his actions at the time of the alleged sodomy.
>
> The hearing officer reviewed the PREA and Michigan State Police Investigation results, the videos which the hearing officer states show nothing to support the prisoner's allegation he was sodomized. The hearing officer notes that the prisoner made no comments to anyone about it at the time, even to the nurse who was with the prisoner throughout the move due to the gassing. After review of all this evidence the hearing officer agreed there was no evidence of sodomy; however, she noted that there was a time when the constraining chains had slipped between the prisoner's buttocks and she surmised that this could have been what the prisoner felt and misinterpreted. Since the prisoner had refused to attend the hearing, there was no direct testimony from him available regarding his intentions. The hearing officer found no evidence that the prisoner knew that his allegation was false and intent is essential to determine guilt for this misconduct so she found him not guilty of the charge.
>
> However, it is unconvincing that anyone, especially a prisoner used to being subjected to chains, would mistake the movement of chains for penetration of a body cavity. In this case, it appears to the hearing officer, without any testimony from the prisoner, created a defense for him and then found in favor of that defense. Thus, the hearing officer's written decision is not supported in the record and is inadequate for the purpose of judicial review.

*Id.* at PageID.67-68.

A rehearing was held on October 24, 2016, by Hearing Officer Szappan. *Id.* at PageID.70. Hearing Officer Szappan considered the following evidence:

> Prisoner was seen. Prisoner states he is not guilty. No one can tell him what he believed occurred. He still believes [Sergeant] Lee sodomized him. Notice of Hearing, Theriot's statement, his questions are either answered in the packet or irrelevant. Rehearing decision 2 pages, Request for rehearing, Hearing report 3 pages, Misconduct report, PREA [(Prisoner Rape Elimination Act)] Grievance (2 pages) PREA Investigation 4 pages (to be labeled confidential), ECD [(Electronic Control Device)] Usage report, email from Lee 2 pages, email from Niemisto, email Jondreau, email Lanala, email Napel, lock assignment, statement of [Hearing Investigator], statement of Theroit 3 pages, all read aloud. Video was viewed by [Hearing Officer]. To be confidential as this is a security camera, prisoner should not know the capabilities. When asked prisoners stated he had no further comments.

*Id.* In the reasons for findings, Hearing Officer Szappan stated:

> The Misconduct report is detailed, it is supported by video. It makes sense and is found credible and convincing. I find prisoner Theriot authored a grievance alleging [Sergeant] Lee sodomized him during a cell move. The grievance was investigated and video tape watched by the Hearing Officer. Two different videos were watched. The video shows staff gas prisoner Theriot remove him from his cell and take him to a suicide watch cell. During the entire incident at least five staff are observing and nowhere in the video does [Sergeant] Lee do anything to Theriot which he suggests occurred. I am not persuaded prisoner Theriot thought or still believes this occurred. As there is no basis for such a belief. I find Theriot falsified a statement, knowing it to be false at the time against [Sergeant] Lee in an effort to get him disciplined. Prisoner has attempted to mislead the disciplinary process for staff. The charges are sustained.

*Id.*

It is clear from the record in this case that Plaintiff's claim that he was sodomized was thoroughly investigated and that there is a complete lack of evidence in support of Plaintiff's conclusory assertion that he was sexually assaulted by Defendant Lee, or by any other individual. In fact, Plaintiff was ultimately found to have falsified the accusation against Defendant Lee. Therefore, because Plaintiff fails to show that Defendant Lee engaged in conduct which constitutes the unnecessary and wanton infliction of pain, his claim against Defendant Lee is properly dismissed.

15

Plaintiff claims that on September 22, 2016, he sent evidence of mail tampering to the library to have copies made, but that Defendants Fliccano, Latnen, Vitteleo, Huss, and Napel refused to give him the copies. Plaintiff claims that this prevented him from filing a complaint regarding the mail tampering. In *Bounds v. Smith*, 430 U.S. 817 (1977), the Supreme Court recognized a prisoner's fundamental right of access to the courts. While the right of access to the courts does not allow a State to prevent an inmate from bringing a grievance to court, it also does not require the State to enable a prisoner to discover grievances or litigate effectively. *Lewis v. Casey*, 518 U.S. 343 (1996). Thus, *Bounds* did not create an abstract, free-standing right to a law library, litigation tools, or legal assistance. *Id.* at 351 (1996). Further, the right may be limited by legitimate penological goals, such as maintaining security and preventing fire or sanitation hazards. *See Acord v. Brown*, No. 91-1865, 1992 WL 58975 (6th Cir. March 26, 1992); *Hadix v. Johnson*, No. 86-1701, 1988 WL 24204 (6th Cir. March 17, 1988); *Wagner v. Rees*, No. 85-5637, 1985 WL 14025 (6th Cir. Nov. 8, 1985).

To state a claim, an inmate must show that conduct complained of caused actual injury in his pursuit of a legal claim. *Lewis*, 518 U.S. at 351; *Talley-Bey*, 168 F.3d at 886; *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996); *Walker v. Mintzes*, 771 F.2d 920, 932 (6th Cir. 1985). An inmate must make a specific claim that he was adversely affected or that the litigation was prejudiced. *Vandiver v. Niemi*, No. 94-1642, 1994 WL 677685, at *1 (6th Cir. Dec. 2, 1994). Particularly, an inmate cannot show injury when he still has access to his legal materials by request, *Kensu*, 87 F.3d at 175, when he fails to state how he is unable to replicate the confiscated documents, *Vandiver*, 1994 WL 677685, at *1, or when he could have received the material by complying with the limits on property, e.g., where he had the opportunity to select the items that he wanted to keep in his cell, or when he had an

16

opportunity to purchase a new footlocker that could hold the property. *Carlton v. Fassbender*, No. 93-1116, 1993 WL 241459, at *2 (6th Cir. July 1, 1993). Because Plaintiff fails to allege facts showing that he suffered an actual injury to pending or contemplated litigation, this claim is properly dismissed. *Dellis v. Corrs. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001) (citing *Lewis v. Casey*, 518 U.S. 343, 351 (1996)).

Plaintiff claims that Defendant Phillips wrote him a retaliatory ticket and had him placed on food loaf after he broke the sprinkler head in his cell in an attempt to force staff to give him his copies. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The Court notes that conduct that violates a legitimate prison regulation is not protected. Plaintiff's conduct in breaking the sprinkler head was not protected conduct because such behavior fell within the definition of "destruction of property" under the MDOC Policy Directive governing prisoner misconduct. Plaintiff fails to allege any facts indicating that he received the misconduct ticket for any reason other than his admitted destruction of property.

Moreover, the ticket does not violate Plaintiff's due process rights because placement on food loaf does not impose an "atypical and significant hardship on the inmate in

17

relation to the ordinary incidents of prison life." *See Sandin v. Conner*, 515 U.S. 472, 486 (1995). Plaintiff does not allege that he lost any good-time credits as a result of the conviction. Because Plaintiff did not suffer an infringement of any liberty interest as a result of the minor misconduct charge he fails to state a claim against Defendant. *See Green v. Waldren*, No. 99-1561, 2000 WL 876765, at *2 (6th Cir. June 23, 2000) ("Green had no due process liberty interest in the minor misconduct hearing because he did not allege any punishment that affected the duration of his confinement, or that constituted an atypical and significant hardship."); *Staffney v. Allen*, No. 98-1880, 1999 WL 617967, at *2 (6th Cir. Aug. 12, 1999) ("Staffney suffered no loss of good time credits as a result of his minor misconduct conviction and the sanctions he received do not represent a liberty interest recognized by the constitution."). Therefore, this claim is properly dismissed.

Finally, the Court notes that Plaintiff's First Amendment claims against Defendants Latnen, Vitteleo, Huss, and Napel regarding interference with his outgoing mail are not clearly frivolous and may not be dismissed on initial screening.

**Pending Motions**

Plaintiff filed a motion for a preliminary injunction (ECF No. 3), in which he seeks to be released from segregation. In his complaint, Plaintiff does not make any allegations or raise any claims concerning his continued placement in segregation. A party seeking a preliminary injunction must show a relationship between the irreparable injury claimed in the motion and the claims pending in his complaint. *See Colvin v. Caruso,* 605 F.3d 282, 299–300 (6th Cir. 2010). A motion for preliminary injunction is not the means by which a plaintiff already in court on one claim can seek redress for all other conditions of confinement that he finds actionable. Simply put, a plaintiff is not entitled to a preliminary injunction on claims not pending in the complaint.

18

*See Ball v. Famiglio,* 396 F. App'x 836, 837 (3d Cir. 2010). In addition, Plaintiff fails to allege any facts indicating that he will suffer irreparable harm if the requested relief is not granted. Therefore, Plaintiff's motion for a preliminary injunction is properly denied.

Plaintiff also filed a motion for "help with full names" of Defendants (ECF No. 2). As noted above, Plaintiff's complaint is to be served on Defendants Latnen, Huss, Napel, and Vitteleo. Unless there is an issue with service on these Defendants, there is no need for Plaintiff be provided with the full names of Defendants. Therefore, Plaintiff's motion is premature and is properly denied.

Plaintiff filed a motion to expedite consideration of his motions to proceed *in forma pauperis* and for a preliminary injunction (ECF No. 5). Plaintiff also filed a motion to serve the complaint (ECF No. 12). Plaintiff's motions are unnecessary and are properly denied.

## **Conclusion**

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Woods, Huhta, Pesola, Dube, Kutchie, Hemmila, Petaga, Morgan, LaChance, Goodreva, Velma, Hennigs, Lee, Phillips, Skytta, Bray, LaForest, Evans, Marshall, Bessener, Berry, Horocs, Fliccano, Washington, Tussing, Russell, Unknown Hoffman, Raymond, Calzetta, Szagganlessory, Sunberg, and Bessner will be dismissed for failure to state a claim. The Court will serve the complaint against Defendants Latnen, Vitteleo, Huss, and Napel. In addition, as noted above, Plaintiff's pending motions (ECF Nos. 2, 3, 5, and 12) will be denied.

An Order consistent with this Opinion will be entered.

Dated:   April 4, 2018                             /s/ Janet T. Neff
                                                   Janet T. Neff
                                                   United States District Judge